**Clifford FLATFORD, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 95–5455.

United States Court of Appeals, Sixth Circuit.

Argued March 7, 1996.

Decided Aug. 28, 1996.

William Allen (argued and briefed), Rural Legal Services of Tennessee, Oak Ridge, TN, for Plaintiff–Appellant.

Paige Auer Winck, Asst. U.S. Attorney, Office of the U.S. Attorney, Knoxville, TN, Mack A. Davis, Laurie G. Remter (argued and briefed), Mary Ann Sloan, Holly A. Grimes, Social Security Administration, Office of General Counsel, Atlanta, GA, for Defendant–Appellee.

Before: MARTIN and BATCHELDER, Circuit Judges, and OLIVER,* District Judge.

BOYCE F. MARTIN, JR., Circuit Judge.

Clifford Flatford was born on August 27, 1939, and has a fifth or sixth grade education. He has worked as a truck driver, maintenance worker, high lift driver, and assembly worker. Flatford underwent open heart surgery in August 1981 for coronary artery disease. In July 1982, Flatford had a heart catheterization which revealed a further narrowing of the coronary arteries but normal left ventricular functioning and grafts that were functioning well. Flatford last worked on March 3, 1983, due to his heart disease. Before and after his surgery, Flatford was treated by or consulted various physicians concerning his complaints of continued angina, symptoms in his leg, nervousness and depression.

Flatford applied for Social Security disability benefits and supplemental income benefits on March 7, 1983. His claim for these benefits was denied and Flatford reapplied for disability benefits on October 2, 1987. He was determined to be disabled beginning December 1, 1987, in a decision dated July 24, 1989.

On September 1, 1990, the Social Security Administration reopened Flatford's 1983 application pursuant to Flatford's request after the decision in *Samuels v. Heckler*, 668 F.Supp. 656 (W.D.Tenn.1986). Prior to a hearing on Flatford's reopened claim, the administrative law judge submitted interrogatories to Dr. Donald Saunders, Jr., a car-

---

* The Honorable Solomon Oliver, United States District Judge for the Northern District of Ohio, sitting by designation.

diologist in Columbia, South Carolina, and invited Flatford's attorney to submit interrogatories of his own. The administrative law judge submitted interrogatories to a Dr. Saunders because no cardiologist in the Knoxville area would serve as a medical adviser to the Social Security Administration. Flatford's attorney did not have any questions at that time but requested a copy of Dr. Saunders' responses and reserved the right to cross-examine Dr. Saunders after reviewing his responses.

On May 6, 1991, an administrative hearing was held and the administrative law judge introduced an exhibit with Dr. Saunders' responses. The exhibit, however, was not provided to Flatford until the hearing. The administrative law judge agreed to submit further interrogatories to Dr. Saunders after the hearing. In two letters dated May 22 and June 25, 1991, Flatford's attorney requested a supplemental hearing to cross-examine Dr. Saunders. In his May 22 letter, Flatford's attorney stated that a cross-examination was needed because "whatever [Dr. Saunders'] answer to the interrogatory may be will direct the next question that I might ask. The only way to adequately examine a witness such as Dr. Saunders is through direct cross examination." In his letter of June 25, Flatford's attorney gave as his reason for requesting a subpoena the fact that he was not furnished with Dr. Saunders' responses until the day of the May 6 hearing despite his efforts to contact the Office of Health Administration to see if the responses had been received. On August 21, 1991, the administrative law judge rejected Flatford's request to cross-examine Dr. Saunders, but permitted Flatford to submit additional interrogatories. In denying Flatford's request for a subpoena to cross-examine Dr. Saunders, the administrative law judge reasoned that Social Security regulation 20 C.F.R. 404.950(d) gave the administrative law judge the discretion to issue a subpoena, and compelled the issuance of a subpoena only where "necessary for fundamental fairness and to obtain evidence that could not be obtained by other means, such as interrogatories." 20 C.F.R. § 404.950 provides in pertinent part:

    (d) Subpoenas

(1) When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

(2) Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.

The administrative law judge concluded that Flatford's attorney had not made a showing as to why the substance and basis of Dr. Saunders' opinion regarding Flatford's health could not be proven through interrogatories.

Flatford submitted further interrogatories for Dr. Saunders on September 17, 1991. According to Flatford's attorney, however, the administrative law judge left seven of the interrogatories out of the copy sent to Dr. Saunders and made changes in the form of the question on five others. Flatford received the responses on October 10, 1991. One question deleted by the administrative law judge concerned Dr. Saunders' use of the "medical expert handbook" he received from the Social Security Administration. On October 18, 1991, Flatford's attorney wrote a letter to the administrative law judge objecting to the introduction of Dr. Saunders' responses because of the administrative law judge's editing of the interrogatories and also because some of Dr. Saunders' answers were not responsive. Flatford's attorney again requested cross-examination because "[t]hese deletions and changes emphasize the need for person-to-person cross examination of this medical advisor." Flatford's attorney

continued, "I am especially concerned about your refusal to include my questions requesting copies of the medical expert handbook and other materials Dr. Saunders may have received from the Social Security Administration." The administrative law judge did not respond to Flatford's renewed request for a subpoena.

On December 21, 1991, the administrative law judge denied Flatford's claim and Flatford appealed. The Appeals Council remanded the case because the administrative law judge had failed to respond to the Flatford's October 1991 objection to the admission of Dr. Saunders' responses. The Appeals Council instructed the administrative law judge to permit Flatford to submit further interrogatories to Dr. Saunders or to explain why interrogatories were not warranted. Flatford submitted further interrogatories and again requested an opportunity to cross-examine Dr. Saunders. The administrative law judge submitted the interrogatories, but instructed Dr. Saunders to disregard Question 2 (requesting a copy of the "Medical Expert Handbook") because it was available to Flatford elsewhere, and to disregard Question 3 (requesting copies of "other training materials or instructions you have received from the Social Security Administration") because it was unduly burdensome.

On February 1, 1993, after receiving Dr. Saunders' responses to this latest set of interrogatories, Flatford again requested a supplemental hearing and opportunity to cross-examine Dr. Saunders. Flatford believed that Dr. Saunders' answers to Questions 7 and 8 were unresponsive, and that Dr. Saunders' unresponsive reply to Question 10 was based on Dr. Saunders' incorrect belief that he had not been furnished with a report from a Dr. Henderson (the record contained two reports from Dr. Henderson). The ad-

ministrative law judge denied Flatford's renewed request, concluding that "[t]here are not material facts that are sought to be proved which have not already been sufficiently addressed in interrogatories or by follow-up interrogatories." After finding that Flatford retained the residual functional capacity to perform a full range of sedentary work, the administrative law judge concluded that Flatford was not disabled and denied Flatford's claim for disability benefits on June 22, 1993. The Appeals Council denied review on October 26, 1993, and the administrative law judge's determination became the final decision of the Commissioner.[1] 42 U.S.C. § 405(g).

Flatford filed suit in federal court on December 27, 1993. On February 2, 1995, a magistrate recommended that the Commissioner's decision be affirmed. Based on this Court's decision in *Berger v. Secretary of HHS,* 835 F.2d 635, 640 (6th Cir.1987), the magistrate reasoned that 20 C.F.R. § 404.950(d)(1) gave the administrative law judge discretion to issue subpoenas. Flatford filed objections to the magistrate's report. On February 21, 1995, the district court accepted the magistrate's recommendation and determined that the administrative law judge had not abused his discretion in refusing to issue the subpoena. The district court dismissed Flatford's case and this timely appeal followed.

Flatford raises one issue on appeal: Whether a social security disability benefits claimant has an absolute due process right to subpoena and cross-examine a medical adviser who provides a "post-hearing report."[2] Flatford argues that regulations giving the administrative law judge discretion to determine whether cross-examination of a person providing post-hearing evidence is necessary for the full development of a case violates his

---

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, P.L. 103–296 s 106(d), 108 Stat. 1464, 1476 (1994) (effective March 31, 1995), the function of the Secretary of the Department of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security.

2. Whether Dr. Saunders' answers to the interrogatories are a "report" or not, only those answers he submitted after May 6, 1991, can be charac-

terized as "post-hearing." It is undisputed that the administrative law judge submitted the first set of interrogatories to Dr. Saunders prior to the May 6, 1991, hearing and that Flatford did not request a subpoena for his testimony at that time. The only distinction important to our resolution of Flatford's due process claim in this case is that a significant portion of Dr. Saunders' interrogatory evidence was submitted post-hearing.

right to procedural due process. Flatford argues that the Supreme Court in *Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 1431–32, 28 L.Ed.2d 842 (1971), as well as six Circuits of the Court of Appeals, have held that an absolute right to cross-examination exists in the context of a social security hearing. In support of his position, Flatford cites *Lidy v. Sullivan,* 911 F.2d 1075, 1077 (5th Cir.1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991), *Coffin v. Sullivan,* 895 F.2d 1206 (8th Cir.1990), *Demenech v. Secretary of HHS,* 913 F.2d 882, 884 (11th Cir.1990), *Wallace v. Bowen,* 869 F.2d 187, 193 (3rd Cir.1988), *Townley v. Heckler,* 748 F.2d 109 (2d Cir.1984), and *Lonzollo v. Weinberger,* 534 F.2d 712 (7th Cir. 1976). Flatford is correct that some Circuits have held that a social security claimant has an absolute right to subpoena a witness (at least where cross-examination has been requested). *See Lidy,* 911 F.2d at 1077 (the Fifth Circuit held that a claimant requesting a subpoena of a reporting physician has an absolute due process right to cross-examination), *accord, Tanner v. Secretary of HHS,* 932 F.2d 1110, 1112 (5th Cir.1991) (citing *Lidy,* 911 F.2d at 1077); *Townley,* 748 F.2d at 114 (Second Circuit held that the opportunity to comment on a post-hearing vocational report was not adequate and that a claimant

who had requested cross-examination had a due process right to cross-examine the vocational consultant); *Coffin,* 895 F.2d at 1212 (the Eighth Circuit held that a claimant who was not told of the submission of a post-hearing report by a vocational expert was denied his due process right to cross-examination where claimant had requested cross-examination).[3] We have decided that a social security claimant does not have an absolute due process right to cross-examine a physician providing a *pre-hearing* report. *Calvin v. Chater,* 73 F.3d 87 (6th Cir.1996).

A few months prior to oral argument, this Court decided in *Calvin v. Chater* that the constitutional right to procedural due process of a social security claimant was not violated by the regulations giving the administrative law judge the discretion to issue subpoenas. 73 F.3d at 92–93. The regulations at issue in *Calvin v. Chater* concerned the procedures for obtaining a subpoena by a supplemental security income claimant. 20 C.F.R. § 416.1450(d)(1) and (d)(2). These regulations are identical to those regarding the issuance of subpoenas in a disability benefits case. 20 C.F.R. 404.950(d)(1) and (d)(2). Specifically, we held that a social security claimant does not have an absolute right to subpoena[4] a physician who submits a pre-

3. Decisions in two other circuits support Flatford's position. In *Lonzollo v. Weinberger,* 534 F.2d 712 (7th Cir.1976), the Seventh Circuit held that the administrative law judge's reliance on a post-hearing report without giving the claimant an opportunity to rebut the report or cross-examine the reporting physician violated due process. *Id.* at 715. The claimant in *Lonzollo* was given a copy of the post-hearing report and the opportunity to comment on it. The Seventh Circuit believed that the opportunity to comment was not sufficient to satisfy procedural due process. The Court believed that *Richardson v. Perales* should be interpreted as holding that a social security claimant has "a right to subpoena" and cross-examine a reporting physician. *Id.* (citing *Richardson,* 402 U.S. at 402, 91 S.Ct. at 1428). The Seventh Circuit appears to assume that the "right to subpoena" is not subject to the discretion of the administrative law judge; *Lonzollo* has been cited for this proposition. *Townley,* 748 F.2d at 114.

The Tenth Circuit's holding in *Allison v. Heckler,* 711 F.2d 145, 147 (10th Cir.1983), may also support Flatford. In *Allison,* the Tenth Circuit relied on 42 U.S.C. § 405(g)'s hearing requirement to decide that "[a]n ALJ's use of a post-

hearing medical report constitutes a denial of due process because the applicant is not given an opportunity to cross-examine the physician or to rebut the report." *Id.; see also Townley,* 748 F.2d at 114 (citing *Allison,* 711 F.2d at 147, for the proposition that a disability benefits claimant has a right to cross examine the author of an adverse report). Because the Tenth Circuit concluded that reliance on a post-hearing report, without opportunity for cross-examination, denied Allison's right to a full and fair hearing, the Tenth Circuit arguably left open the question of whether a social security benefits claimant has an absolute right to a subpoena to cross-examine the author of an adverse report. However, the *Allison* court cited *Lonzollo* in its holding, and presumably adheres to the Seventh Circuit's view that a claimant has an absolute right to cross-examination. *Id.*

4. We understood the phrase "absolute right to a subpoena" to mean that "a party who requests a subpoena is automatically entitled to its issuance whether or not he has complied with the published rules governing such matters." 73 F.3d at 93. We understand Flatford to be making the same claim.

hearing report, but rather the administrative law judge has the discretion to issue a subpoena "where necessary for the full presentation of a case." *Id.* at 93. The Commissioner argues here that *Calvin v. Chater* requires this Court to hold that an administrative law judge has the discretionary power to issue a subpoena to a medical adviser providing post-hearing evidence and that this power does not violate the Fifth Amendment. U.S. Const. amend. V. The Commissioner also argues that the administrative law judge did not abuse his discretion in this case.

Our decision in *Calvin v. Chater* settles the issue of whether a social security claimant has an absolute right to cross-examine a reporting physician at the hearing. The answer is "no." Our task is to decide whether a claimant has an absolute due process right to subpoena a physician providing post-hearing evidence.

### I.

■ A threshold question presented by this case is whether post-hearing evidence can be considered by the Commissioner at all. This question must be addressed because Congress has directed the Commissioner to make her decisions based on evidence adduced at the administrative hearing. 42 U.S.C. § 405(b)(1) provides in pertinent part that:

> Upon request [by any individual receiving an unfavorable decision or other person named in the statute] ... who makes a showing in writing that his or her rights may be prejudiced by any decision the Commissioner of Social Security has rendered, the Commissioner shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and if a hearing is held, *shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.*

(emphasis added). Thus, if post-hearing evidence cannot be the basis for the Commissioner's decision, we need not address whether Flatford has a due process right to cross-examine a doctor providing such evidence. In other words, Flatford's constitutional claim is moot if the answer to whether the Commissioner may use post-hearing evidence in her decisionmaking is "no." The Commissioner's practice of using post-hearing evidence has "alarmed," some courts in light of the mandate in 42 U.S.C. § 405(b)(1) that the Commissioner base her decision on "evidence adduced at the hearing." *Allison,* 711 F.2d at 147 (citing *Gullo v. Califano,* 609 F.2d 649, 650 (2d Cir.1979)). Recognizing that the language of Section 405(b) is at odds with the practice engaged in by the Commissioner and claimants alike of entering post-hearing evidence into the record, the Third Circuit in *Wallace v. Bowen* "assumed without deciding" that Section 405 permitted the introduction of post-hearing evidence. 869 F.2d at 191.

Section 405(b)(1) mandates that evidence not presented at *the* hearing may not be used by the Commissioner in making her decision. The use of the definite article "the" prior to "hearing" indicates that Congress understood "hearing" to be a discreet event in time and space, and not an ongoing process or a series of events comprising "a hearing" on the claim. Pursuant to the rulemaking authority granted to the Commissioner and her predecessors pursuant to 42 U.S.C. § 405(a),[5] the Commissioner has issued regulations embodying differing views about whether a benefits decision will be based only on evidence adduced at "the hearing" or whether the Commissioner may consider evidence placed in the record both prior to and after the hearing. Some social security regulations show that the Commissioner understands the word "hearing" to have a broader meaning than is conveyed by a literal interpretation of

---

5. Section 405(a) provides that

[t]he Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall

adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

42 U.S.C. § 405(b)(1). The general impression imparted by a reading of the regulations is that the administrative law judge will make a determination based on the evidence presented prior to and at the hearing.[6] 20 C.F.R. § 404.929 provides the claimant with an overview of the hearing before the administrative law judge, and states in pertinent part that "[a]t the hearing you may appear in person, submit new evidence, examine the evidence used in making the determination or decision under review, and present and question witnesses. The administrative law judge who conducts the hearing may ask you questions. *He or she shall issue a decision based on the hearing record.*" (Emphasis added). Furthermore, a claimant is required to "make every effort" to ensure that all material evidence is received by the administrative law judge by the time of the hearing. 20 C.F.R. § 404.935. Another regulation, 20 C.F.R. § 404.943 provides that an "adjudication officer" (not the administrative law judge) will assist the claimant in preparing for the hearing and will "refer the claim to the administrative law judge for further proceedings when the development of the evidence is complete." Another regulation, however, requires that "the administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision. *The decision must be based on evidence offered at the hearing or otherwise included in the record.*" 20 C.F.R. § 404.953(a). Obviously, the regulations governing the administrative hearing are not the height of consistency.

We have had one occasion to consider whether evidence adduced outside of the hearing could provide a basis for the Commissioner's decision. Under the regulations governing the review of an administrative law judge's decision by the Appeals Council, the Appeals Council may gather and use evidence not presented at the administrative hearing in its review. We approved of this practice in *Lawson v. Secretary of HHS,* 688 F.2d 436 (6th Cir.1982). *Lawson* involved a claim for benefits under the Black Lung Benefits Act of 1969, but that act incorporates the hearing and review procedures of the Social Security Act. 30 U.S.C. § 923(b).

In *Lawson,* we decided that the social security regulation allowing the Appeals Council to obtain additional evidence where it could do so more expeditiously and where "the right of the claimant would not be adversely affected," 29 C.F.R. § 410.664, was not in conflict with 42 U.S.C. § 405(b)'s requirement that the Secretary make decisions "on the basis of evidence adduced at the hearing." We necessarily relied heavily on "the Secretary's statutory authority to conduct additional proceedings and hearings and his broad regulatory power" under 42 U.S.C. § 405(a) and (b).[7] 688 F.2d at 440. We reasoned in *Lawson* that 20 C.F.R. § 410.664 "provide[d] for a continuation of the [administrative] hearing before the Appeals Council. For a hearing is a proceeding in which evidence is introduced and the claimant's right to be heard is protected." *Id.* Although we addressed only the claimant's statutory rights, we concluded by holding that the claimant's "right to be heard" was protected because the Appeals Council is required by the regulation to remand the case to the administrative law judge if cross-examination would be "of value to the claimant." *Id.*

■ If the Commissioner's interpretation of a statute is reasonable, we must defer to

**6.** A brief explanation of how a claimant receives a hearing may be helpful. According 20 C.F.R. § 404.930, a hearing before an administrative law judge is available before an only after a claimant has received an initial determination regarding his or her claim (usually unfavorable) and the Commissioner has taken one of the following actions regarding the initial determination: 1) has reconsidered the decision, 2) revised it (in some cases), 3) has reconsidered a revised initial determination, 4) has revised a reconsidered determination, or 5) revised her decision based on evidence not included in the record on which the prior decision was based.

**7.** In addition to requiring that a decision be based on evidence adduced at the hearing, Section 405(b)(1) also gives the Secretary the power to conduct other hearings and investigations.

The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence.

that interpretation. As the Supreme Court stated in *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983):

> The Social Security Act directs the Secretary to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" in disability cases. 42 U.S.C. § 405(a). As we previously have recognized, Congress has "conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act." *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981); *see Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious. *Herweg v. Ray,* 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); *Schweiker v. Gray Panthers,* supra, 453 U.S., at 44, 101 S.Ct., at 2640.

*Id.* at 466, 103 S.Ct. at 1956–57 (footnote omitted). While we will defer to the Commissioner's interpretation if it is not arbitrary or capricious, we have observed that " 'the clear meaning of statutes as written' ultimately trumps the policy of 'judicial deference to a reasonable statutory interpretation by an administering agency.' " *Flores v. Rios,* 36 F.3d 507, 514 (6th Cir.1994) (quoting Justice Kennedy from *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475–76, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992)).

*Lawson* does not control our decision here insofar as we are not examining the regulations governing the Appeals Council's review. *Lawson,* however, requires this panel to adhere to the position that where the Commissioner has implemented a regulation permitting the administrative law judge to consider evidence not presented at the hearing, such a regulation is consistent with the entire text of 42 U.S.C. § 405(b), which both requires the Commissioner to make a decision based

on evidence adduced at the hearing and yet also gives the Commissioner the power to conduct other hearings and investigations. As stated above, 20 C.F.R. § 404.953(a) provides that "the administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision. *The decision must be based on evidence offered at the hearing or otherwise included in the record.*" As with the regulations at issue in *Lawson* governing the Appeals Council, the Commissioner has in 20 C.F.R. 404.953(a) broadly construed the word "hearing," making it synonymous with "record." Bound as we are by our interpretation of 42 U.S.C. § 405(b)(1) in *Lawson,* we will defer to the Commissioner's interpretation that she is permitted to make a decision based on evidence in the record, and is not limited to making a decision based on the "evidence adduced at the hearing." We do not believe that the Commissioner's interpretation of 42 U.S.C. § 405(b) is arbitrary or capricious.

## II.

We turn now to the merits of Flatford's due process claim. The procedural protection provided by the Fifth Amendment is in force whenever the United States is taking an individual's life, liberty or property. The guarantee of due process of law does not always prevent deprivations of life, liberty or property, but embodies the promise that no deprivation will occur without notice and fair hearing. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) (every deprivation of life, liberty or property must be "preceded by notice and opportunity for hearing appropriate to the nature of the case"); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (stating that "[w]e have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest' ") (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971)). Before the Fifth Amendment's guarantee of due process attaches, though, the United States must be

attempting to deprive a person of a protected interest—in this case a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (stating that the due process clauses of the Fifth and Fourteenth Amendments protect property interests). Determining what types of interests are "property" interests is not always an easy task. *Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (defining property as a "legitimate claim of entitlement" to something). Flatford assumes, without discussion, that he has a protected property interest in the social security disability benefits for which he has not yet been determined to be qualified. Citing *Walters v. National Ass'n of Radiation Survivors*, the Commissioner recognizes that whether Flatford has a protectable property interest in unprovided disability benefits is an "arguable" issue, but does not further discuss the matter. 473 U.S. 305, 320 n. 8, 105 S.Ct. 3180, 3189 n. 8, 87 L.Ed.2d 220 (1985). In footnote 8 in *Walters,* the Supreme Court noted that it had not yet held that an applicant for benefits had a property interest in such benefits if the person met the statutory qualifications, although it had held that a person receiving benefits had a property interest in continuing to receive the benefits. *Id.* (citing *Atkins v. Parker,* 472 U.S. 115, 128, 105 S.Ct. 2520, 2528, 86 L.Ed.2d 81 (1985) (food stamps), and *Mathews,* 424 U.S. 319, 96 S.Ct. 893 (social security disability benefits)).

The question of whether a social security disability benefits claimant has a "legitimate claim of entitlement" to such benefits has not been adequately explored by the Supreme Court, despite the opportunity it had to do so in *Richardson v. Perales*. In *Perales,* the Supreme Court was faced with the question of whether a social security disability claimant's due process rights were violated when the Secretary based his decision on unsworn, written reports submitted by several physicians prior to the hearing. 402 U.S. at 398, 91 S.Ct. at 1425–26. It must be emphasized that Perales was a claimant for social security disability benefits, not a recipient, who asserted a due process right to have the Secretary base his decision on only nonhearsay evidence.[8] The Supreme Court determined that the protections of due process applied, thus accepting the proposition that Perales' claim to benefits gave him a protectable property interest.

We accept the propositions advanced by the claimant, some of them long established, that procedural due process is applicable to the adjudicative administrative proceeding involving 'the differing rules of fair play, which through the years have become associated with differing types of proceedings,' *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960); that 'the "right" to Social Security benefits is in one sense' "earned," *Flemming v. Nestor,* 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960); and that the extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss". * * * Accordingly * * * "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected buy governmental action." *Goldberg v. Kelly,* 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970).

*Perales,* 402 U.S. at 401–02, 91 S.Ct. at 1427. The Supreme Court's cite to *Flemming* is the only discussion in *Perales* concerning the claimant's property interest. In light of *Perales,* all appellate courts to date, including this one, have not questioned whether a social security claimant has a property interest in benefits for which he or she hopes to qualify. Because the Supreme Court has assumed in *Perales* that a social security applicant has "more than a unilateral expectation" of a benefit, *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, and because this assumption is

---

**8.** In *Mathews,* 424 U.S. at 332, 96 S.Ct. at 901, the Supreme Court cites *Perales* for the proposition that due process requirements apply to *terminations* of benefits. *Perales* did not involve a termination of benefits already being received, but it follows that if due process applies to a claim for benefits, it would apply to benefits being received.

necessary to the holding in that case (that due process applied) we proceed on the same basis. Thus, we will assume that Flatford has a property interest in the benefits he claims.

### III.

■■■ Due process requires that a social security hearing be "full and fair." *Perales,* 402 U.S. at 401–02, 91 S.Ct. at 1427. For the reasons that follow, though, we believe that due process does not require the Commissioner to allow a social security claimant upon request to cross-examine every physician providing post-hearing evidence in order for the hearing to be "full and fair."

In *Perales,* the Supreme Court held that the reports of examining physicians who were not called to testify could provide substantial evidence for a decision denying benefits, even though all witnesses who provided live testimony supported the claim. *Id.* at 402, 91 S.Ct. at 1428. In so concluding, the Supreme Court stated that these reports could provide substantial evidence despite their hearsay character if "the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity to cross-examin[e] . . . the physician." *Id.* Thus, *Perales* did not concern the issue of whether a social security benefit claimant who requests cross-examination of a witness must be allowed to conduct it. Although the Supreme Court used the phrase "right to subpoena," the Court did not discuss whether this right was absolute or limited, or the nature of the right. In any event, the Court's assumption that a claimant has a "right to subpoena" is dicta because it does not concern the issue in the case.

Nonetheless, some Circuits have used this dicta as a basis to hold that social security claimants have an absolute right to subpoena persons providing evidence. The Fifth Circuit in *Lidy* interpreted the "right to subpoena" language in *Perales* to mean that due process requires cross-examination upon request.

[L]ater in its opinion the [*Perales*] Court refers to "the use of the subpoena and consequent cross-examination," [402 U.S.] at 410 [91 S.Ct. at 1431] . . . suggesting that such cross-examination necessarily follows from the filing of a request for a subpoena. We also observe that in the major passage at issue, the Court refers to the "right to subpoena," *id* at 402, 91 S.Ct. at 1428 . . . not merely the "right to request a subpoena," thus implying that the entitlement to a subpoena is automatic. Thus, we conclude that the better reading is that by requesting a subpoena, a claimant has the right to cross-examine an examining physician.

911 F.2d at 1077; *Townley,* 748 F.2d at 114 (interpreting *Perales* as upholding the use of hearsay reports only if they are "subject . . . to the use of the subpoena and consequent cross-examination") (quoting *Perales,* 402 U.S. at 410, 91 S.Ct. at 1431); *Coffin,* 895 F.2d at 1212 (citing *Perales,* 402 U.S. at 402, 91 S.Ct. at 1427–28 for proposition that "[d]ue process requires that a claimant be given the opportunity [9] to cross-examine and subpoena the individuals who submit reports"). We do not think that *Perales* provides the complete answer regarding whether a claimant must always be allowed to have cross-examination for the procedures utilized by the Commissioner to be fair to the claimant and achieve the goal of full disclosure of the facts relevant to the determination of disability. *Calvin,* 73 F.3d at 92–93. As articulated by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the procedures necessary to satisfy due process are flexible, requiring the balancing of three factors.

---

9. The Eighth Circuit understands "opportunity to cross-examine" to mean that, if the claimant requests cross-examination, he or she is entitled to it. "Opportunity to cross-examine" may also mean that the claimant might be permitted by the administrative law judge to cross-examine a reporting witness if, in the judge's discretion, the cross-examination is necessary to a full develop-

ment of the case. *See Wallace,* 869 F.2d at 192 ("the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case").

" 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).... [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334, 96 S.Ct. at 902–03. The claimant in *Mathews* challenged the Secretary's failure to provide him with a an oral evidentiary hearing before the Secretary terminated the claimant's social security benefits. The majority held that due process did not require a pretermination evidentiary hearing. It reached its conclusion after balancing the claimant's interest (loss of benefits between the time of the initial decision terminating the benefits and the posttermination hearing), the small chance that the desired procedure would increase the accuracy of the Secretary's decision given the relatively objective nature of the factual disputes in disability cases (and their susceptibility to proof by scientific evidence), and the fact that significant additional cost to the government of providing pretermination hearings would not greatly increase the fairness or provide a more meaningful hearing to the claimant.

The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Joint Anti–Fascist Comm. v. McGrath,* 341 U.S. at 171–72, 71 S.Ct. at 649.... All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard," *Goldberg v. Kelly,* 397 U.S. at 268–69, 90 S.Ct. at 1021 ..., to insure that they are given a meaningful opportunity to present their case. *Id.* at 348–49, 96 S.Ct. at 909.

The private interest involved here is Flatford's interest in a fair determination of his qualification (or lack thereof) for social security disability benefits and a meaningful opportunity to present his case. A disability determination is based on a number of factors, including the objective medical evidence in the case. Because of the nonadversary nature of social security adjudications, the need to cross-examine every reporting physician is less crucial to the fairness and accuracy of the administrative law judge's decision than it would be in an adversarial context. We are unpersuaded that interrogatories may not provide a meaningful opportunity for a disability claimant to confront the evidence he believes to be adverse to his claim.

As illustrated by this case, the practice of using interrogatories to question medical witnesses appears to work well for discerning an applicant's medical condition. While almost every claimant in every case would like to cross-examine the witnesses, we do not believe that the danger of inaccurate medical information or biased opinions is sufficiently great to cause us to believe that a claimant might erroneously be denied benefits without cross-examination upon demand.

Lastly, the burden on the administrative system of an absolute right to subpoena would be significant. Aside from the cost to the social security trust fund of paying for the travel expenses and fee of Dr. Saunders if he were subpoenaed, the number of physicians willing to provide medical advice to the administrative law judge would drop. The protection of the administrative law judge's discretion to issue a subpoena would reduce the inconvenience to reporting physicians of having to be cross-examined by those claimants who, for whatever reason, believe that more objective medical information would be obtained by asking questions in person rather than submitting them in writing.

■ A determination of Flatford's claim requires that he have the opportunity to present all of his evidence and to confront the evidence against him. This opportunity,

 

we believe, is present where cross-examination is available where reasonably necessary to the full development of the case. We agree with the minority of circuits that an absolute right to cross-examination is not required in the social security disability benefits cases for the development of a complete record. *Demenech,* 913 F.2d at 884 (holding that claimant has a right to an opportunity to cross-examine, subpoena may issue in ALJ's discretion); *Wallace,* 869 F.2d at 191–93 (same); *but see Lidy,* 911 F.2d at 1077 (holding that an absolute right to subpoena exists); *Coffin,* 895 F.2d at 1212 (same); *Townley,* 748 F.2d at 113 (same); *Allison,* 711 F.2d at 147 (same); *Lonzollo,* 534 F.2d at 714 (same).

## IV.

 Our conclusion that due process requires that a social security disability claimant have the opportunity to cross-examine a reporting physician where reasonably necessary to a full development of the evidence in the case does not end our analysis. We must decide whether the administrative law judge abused his discretion in this case. This is a close call. The fact that the administrative law judge asked for Dr. Saunders' evidence post-hearing is a factor that favors Flatford. When evidence is gathered post-hearing at the initiation of the administrative law judge a heightened danger exists that the claimant may not have the opportunity to cross-examine the physician if needed. The claimant may be discouraged from requesting a supplemental hearing because of the inconvenience or expense of travelling to the hearing site a second time, or because the scheduling of a supplemental hearing means that more time will pass before the claimant receives a decision. A second factor here is the minimal number of questions Dr. Saunders failed to answer satisfactorily. Although we are concerned about the administrative law judge's practice in this case of withholding interrogatories requested by the claimant, Flatford's attorney submitted several sets of interrogatories and was overall very successful in gathering information from Dr. Saunders. Dr. Saunders was unresponsive or did not answer because he was misinformed regarding the contents of the record only as to

a few questions. At some point a witness becomes sufficiently unresponsive, despite counsel's best efforts to communicate in written form, so as to make cross-examination necessary. Here, we believe that further or more precisely drafted interrogatories could have solved the problem. Third, the bulk of the record does not show that the administrative law judge abandoned his role as an impartial decisionmaker or failed in his duty to aid the claimant in a full development of the record. In this regard, absent a showing of bias, we do not believe that the administrative law judge's decision to deny a subpoena to Flatford was an abuse of his discretion.

Accordingly, we AFFIRM the decision of the district court.