BATCHELDER,
Dissenting.
I respectfully dissent. I would hold that the plaintiffs do not have a property interest in or a legitimate claim of entitlement to the TennCare benefits prior to plaintiffs’ obtaining approval of their applications, and that even if the plaintiffs could demonstrate such an interest, they have not demonstrated either a procedural or a substantive due process violation. Finally, I would hold that the irrebuttable presumption doctrine has no rational application to this case.
It is not clear to me whether in the section entitled “Due Process Rights” the majority opinion actually holds that the plaintiffs have demonstrated a substantive due process violation, or holds only that the plaintiffs have demonstrated that they have a property interest for the purposes of a procedural due process claim. In my view, the plaintiffs can demonstrate neither. Unlike the plaintiffs in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), these plaintiffs were not already receiving benefits which the state intended to or did terminate without a pretermination hearing. And the majority’s conclusion that because TennCare is a *565 program created under the Medicaid Act, and Medicaid is a program established under the Social Security Act, applicants for TennCare, like applicants for social security, have a property interest in the benefits “for which they hope to qualify” is unwarranted. Contrary to the majority opinion’s claim, we did not hold in Flatford v. Chater, 93 F.3d 1296 (6th Cir.1996), that applicants for social security benefits have a property interest in those benefits. Rather, based on the Supreme Court’s decision in Richardson v. Perales, 402 U.S. 389, 401-02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), which in turn quoted the Court’s observation in Flemming v. Nestor, 363 U.S. 603, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), that the “right to Social Security benefits is in one sense earned,” we said:
Because the Supreme Court has assumed in Perales that a social security applicant has ‘more than a unilateral expectation’ of a benefit, and because this assumption is necessary to the holding in that case (that due process applied) we proceed on the same basis. Thus we will assume that Flatford has a property interest in the benefits he claims.
Flatford, 93 F.3d at 1304-05 (internal citations omitted) (emphasis added).
In Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court made it clear that a property interest is something in which an individual “must have more than an abstract need or desire.... He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” Id. at 577, 92 S.Ct. 2701. And property interests, the Court emphasized, are not created by the Constitution but are creatures of independent sources such as state law.[1] Id.
TennCare is a partially federally funded waiver plan created by the State of Tennessee under Medicaid. TennCare benefits are different from social security benefits, which are premised on contributions paid into the system by the claimant during his or her years of employment. Although Medicaid is set up under the social security program, it is not a program that awards benefits that are in any sense “earned,” and TennCare, which is established under Medicaid, is not a medical insurance program into which these plaintiffs have made payments or contributions. Medicaid is a program that was enacted “for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons,” Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), and a state is not required to provide Medicaid services for which there is no federal financial participation. See id. The TennCare program is subject to both state and federal funding limits, and the state law establishing the program provides that expenditures of state funds for the program cannot exceed the amount appropriated for it by the legislature. Tenn.Code Ann. § 71-5-109.
TennCare is not only limited in financial scope, it is limited to specific classes of recipients: material to this litigation are those who are uninsured and those who are uninsurable. The program is further limited as to the former — they have a window of opportunity for applying for the insurance; no such limitation applies to the latter. In order to enforce those limi *566 tations, the State has empowered the Commissioner of the Department of Finance and Administration to designate the place and manner in which applications for enrollment in the program are to be filed. The Commissioner requires that any applicant who seeks enrollment in TennCare on the basis of uninsurability must provide a letter from a private insurer stating that the applicant has been denied insurance coverage. In short, only those applicants who are eligible by reason of their being uninsured or uninsurable have any hope of becoming insured under TennCare; only those uninsurable applicants who provide evidence of uninsurability may take advantage of the open enrollment; and only a finite number of those will be enrolled in the program because of the funding limitations.
These plaintiffs have demonstrated no more than a unilateral expectation that they would be able to enroll in the Tenn-Care program. They are not in the position of the Goldberg plaintiffs, whose existing benefits were about to be terminated without any opportunity for the plaintiffs to establish their continuing eligibility for those benefits under the statute. They are not in the position of the plaintiff in Flatford, whose claim was for benefits from the social security system into which he had paid during the years of his employment. The fact that Medicaid does not limit the duration of benefits to Medicaid recipients after they have been found to be eligible does not, as the majority opinion holds, establish a continuity of entitlement in an applicant for enrollment in the TennCare program, and the fact that Medicaid is established under the Social Security Act does not suffice to convert a TennCare applicant’s hope of becoming an enrollee into a legitimate expectation of obtaining TennCare coverage. These plaintiffs have no property interest in the TennCare benefits they seek.[2]
Even if one could conclude that the plaintiffs have demonstrated a property interest, however, they have not demonstrated that they have been denied due process, either substantive or procedural. Turning first to substantive due process, as this court has often observed, “[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process.” Bell v. Ohio State Univ., 351 F.3d 240, 249-50 (6th Cir.2003). The Supreme Court has made it clear how narrow those interests are:
Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation’s history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in *567 substantive-due-process cases a careful description of the asserted fundamental liberty interest.
Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Under no stretch of the imagination does the plaintiffs’ claim of entitlement to enrollment in TennCare rise to the level of a fundamental right or liberty implicit in the concept of ordered liberty. Indeed, it is difficult to imagine liberty or justice being disturbed at all by the deprivation these plaintiffs claim, let alone ceasing to exist.
While I do not think that the forms used by the TennCare program provided applicants with the best or clearest notice of the application requirements or the appeal procedures, I believe any deficiencies in these forms fall well short of depriving these plaintiffs of procedural due process. These plaintiffs may have been confused by the application forms or the denial letters, but even if that confusion was the fault of the TennCare Bureau, it does not rise to the level of a denial of due process. Contrary to the majority opinion’s finding, the denial letters did advise plaintiffs that they had a right to appeal, and, indeed, the letters invited the plaintiffs to call the telephone number provided in the letter if they had questions. To hold, as the majority opinion does, that forms utilized by the bureaucracy deny due process to the individuals who are to use them because those forms are confusing or are less clear than they might be, is to make a constitutional issue out of every dispute over an agency’s paperwork. Neither was there any denial of a meaningful opportunity to be heard. These plaintiffs not only received a hearing, they were represented by counsel and had the opportunity to raise their legal challenges to the procedures. That those challenges were not successful does not mean that the plaintiffs were denied due process.
Finally, the majority opinion concludes that TennCare’s requirement that applicants seeking to enroll in the program as uninsurables must provide a letter from a private insurer establishing uninsurability, subjects those applicants to an unconstitutional irrebuttable presumption that they are not uninsurable. This flies in the face of logic. An irrebuttable presumption is a presumption that as a matter of law can never be rebutted, regardless of the facts. But an applicant for TennCare who has not provided the required letter and is therefore presumed not to be uninsurable, may rebut the presumption simply by providing the letter. It is true that an applicant who is in fact not uninsurable will not be able to obtain the letter, and hence will not, as a matter of fact, be able to rebut the presumption. But the presumption as to that applicant is irrebuttable only because it is true, not because the applicant, regardless of the actual facts, is not permitted as a matter of law to rebut it.
The majority opinion’s rebanee on Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (irrebuttable presumption that every pregnant teacher is physically incapable after the fifth or sixth month of pregnancy of continuing to teach), and Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (irrebuttable presumption of nonre-sidency for any student who had lived outside the state during the year prior to his application for in-state tuition rate) is entirely misplaced. In neither of these cases were the plaintiffs permitted to avoid the application of the presumptions by providing evidence to rebut them. The plaintiffs before us here, on the other hand, could rebut the presumption that they were not uninsurable simply by providing TennCare with the required letter. The fact that they failed to do so or failed to do *568 so timely, does not make the presumption irrebuttable.
In any event, the Supreme Court has explicitly declined to extend the principles annunciated in Vlandis and LaFleur, to “a noncontractual claim to receive funds from the public treasury[, which claim] enjoys no constitutionally protected status.... ” Weinberger v. Salfi, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In that case, the Court upheld the constitutionality of a provision of the Social Security Act that barred widows who had been married to their late husbands for less than nine months from receiving certain social security benefits that would normally be paid to widowed spouses. Rejecting the district court’s extension of the holdings of Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (holding unconstitutional an irrebuttable presumption that all unmarried fathers are unfit to raise their children), Vlandis, and LaFleur to the “nine-month rule,” the Court said that to apply the doctrine of those cases to the eligibility rule would turn that doctrine “into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution.” Id. at 771, 94 S.Ct. 791. The “nine-month rule,” the Court concluded, would pass muster if it were legislatively reasonable:
[T]he question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in Mourning [v. Family Publications Serv. Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) ]. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.
Id. at 777, 94 S.Ct. 791.
The TennCare requirement at issue here is designed to ensure that only individuals who are in fact uninsurable are eligible for TennCare’s open enrollment. Certainly the State has a legitimate desire to avoid abuse of the open enrollment benefit, and certainly the State could rationally have concluded that requiring a letter establishing uninsurability would protect against such abuse. Unlike the indiscriminate “nine-month rule” upheld in Wein-berger, the TennCare rule is imprecise only for that period of time until the individual applicant submits the letter demonstrating his uninsurability. It is difficult to envision a method of ensuring against abuse with which it would be easier for the applicant to comply.
Finally, the challenged requirement is perfectly rational when one considers the definition of “uninsurable” that is promulgated in the Tennessee regulations: “unable, because of an existing medical condition, to purchase health insurance.... ” TenN. Comp. R. & Regs. 1200-13-12-02. The TennCare Bureau does not determine whether an individual is able to purchase health insurance from a private carrier— the carrier does. The alternative would be for the TennCare Bureau to keep abreast of changes both in medical science and *569 health insurance standards so as to be able to make a conclusive guess as to whether or not a given individual would, if he applied for insurance, be able to purchase it. It is difficult to imagine that such an approach would be more applicant-friendly than the requirement challenged by these plaintiffs.
For all of the foregoing reasons, I dissent.

. The majority opinion cites Atkins v. Parker, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), where the property rights (food stamp benefits) established by statute were being taken away; unlike the situation here where no right has ever been established. See Atkins, 472 U.S. at 117-18, 105 S.Ct. 2520.

. The majority opinion's reliance on Supreme Court precedent concerning private rights of action to buttress its conclusions as to property rights is troubling. In Gonzaga University v. Doe, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the Supreme Court discussed the determination of a cause of action under § 1983. Gonzaga, 536 U.S. at 283-84, 122 S.Ct. 2268. The Supreme Court’s discussion in California v. Sierra Club, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), likewise concerns a private right of action. Sierra Club, 451 U.S. at 294, 101 S.Ct. 1775 ("Here, the statute states no more than a general proscription of certain activities; it does not unmistakably focus on any particular class of beneficiaries whose welfare Congress intended to further. Such language does not indicate an intent to provide for private rights of action.”) The majority opinion provides no authority to support its apparent conclusion that property rights are the equivalent of private rights of action.