Eugene J. COPELAND,
Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellee.

No. 87–2344.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1988.

Decided Aug. 3, 1988.

Opinion Nov. 17, 1988.

Harvey P. Sackett, San Jose, Cal., for plaintiff-appellant.

Michael R. Power, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before KOELSCH, and LEAVY, Circuit Judges, and BRYAN *, District Judge.

BRYAN, District Judge:

## SUMMARY

### Social Security

Appeal from denial of disability benefits. AFFIRMED.

Claimant Copeland appealed the Secretary's decision that the onset date of his disability was September 9, 1985, rather than December 3, 1981.

Copeland worked as a machinist until December of 1981. In May 1982 he ruptured a biceps muscle and injured his back. In December 1982 he applied for benefits, alleging disability due to high blood pressure, arthritis, and bad discs in his back. His application was denied initially, and again on reconsideration. After a hearing on December 19, 1983, the first Administrative Law Judge (ALJ) denied Copeland's applications. The Appeals Council affirmed. Copeland filed suit. On a motion for summary judgment, the district court rejected Copeland's arguments on several issues, and remanded the case to the Appeals Council for further evaluation of the extent of Copeland's alcohol abuse, and the effects of that abuse on Copeland's orthopedic impairments. The Appeals Council further remanded the case to a second ALJ for consideration of the alcohol issues, and for "such action as may be necessary to complete the administrative record." Accordingly, the second ALJ considered new evidence of disabling impairments after December 19, 1983. He concluded that there was no loss of functional capacity due to alcohol use, but that due to "significant and progressive [physical] deterioration" Copeland had become disabled as of September 9, 1985.

---

* The Honorable Robert J. Bryan, United States District Judge for the Western District of Wash-

The Appeals Council adopted the ALJ's recommendation and the district court affirmed. This appeal followed.

Our standard of review was recently summarized in *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 575–76 (9th Cir.1988):

This court may set aside a denial of Social Security disability insurance benefits when the Secretary's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985). "Substantial evidence" means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 402, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Taylor*, 765 F.2d at 875. We consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Secretary's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985).

## ISSUES ON APPEAL

*A. Appellate jurisdiction over issues discussed in the district court's order dated April 9, 1985.*

At the outset, the Secretary argues that this court lacks jurisdiction over certain issues raised by the claimant in this appeal.

The Secretary argues that this appeal is untimely because the district court's order was not appealed in 1985. He con-

---

ington, sitting by designation.

tends that the district court's decisions on these three issues were final decisions on separable legal issues and, therefore, were then appealable pursuant to this court's holding in *Stone v. Heckler*, 722 F.2d 464, 466–68 (9th Cir.1983). The district court addressed these issues in its order dated April 9, 1985. They include:

1) whether the first ALJ abused his discretion in limiting the interrogatories propounded to consulting physician Hanley;

2) whether the first ALJ erred in his examination of vocational expert Morrell; and

3) whether both ALJs erred by failing to make proper findings regarding the credibility of the claimant's complaints of pain.

28 U.S.C. § 1291 confers jurisdiction on the courts of appeal from all final decisions of the district courts. For purposes of 28 U.S.C. § 1291, a final decision is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978), *quoting from Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Restricting appellate review to "final decisions" within the meaning of 28 U.S.C. § 1291 prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

In this case, the district court's order was not a final order within the meaning of 28 U.S.C. § 1291 because part of the order remanded the case to the ALJ for determination of whether alcohol use affected Copeland's functional capacity. The order was therefore a remand for determination of an issue which may have altered the

Secretary's decision. Remand could have resulted in Copeland being awarded all the benefits he sought. That fact distinguishes this case from a remand order such as the one in *Stone* which finally determined a separable legal issue, and which therefore was appealable. This case is more like *Gilcrist v. Schweiker*, 645 F.2d 818 (9th Cir.1981).[1] This court has jurisdiction over these three issues.

*B. The ALJ's limits on interrogatories propounded to consulting physician Hanley.*

Claimant Copeland contends that the first ALJ abused his discretion by limiting Copeland's interrogatories to Dr. Hanley, who examined Copeland at the request of California State officials. Specifically, Copeland argues that Judge Turner refused to submit questions regarding Copeland's abilities to sit, stand, and walk prior to September 9, 1985. As a result, Copeland maintains that the first ALJ had an insufficient basis for finding that Copeland was capable of doing light work prior to September 9, 1985.

The ALJ did not require Dr. Hanley to answer interrogatories numbers 15, 18, and 19. These interrogatories asked Dr. Hanley's opinions regarding Copeland's claimed problems with his back, legs, knees, and feet.

■■■ A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts. *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir.1983), *citing* 5 U.S.C. § 556(d). The ALJ has discretion to decide when cross-examination is warranted. *Id.* In his decision, the ALJ indicated that he limited the interrogatories to cover the concerns raised by the claimant's counsel at the time of hearing. This was not an abuse of discretion.

1. In *Gilcrist*, the district court remanded the case to the ALJ for reconsideration of evidence regarding Gilcrist's medical history. Gilcrist tried to appeal the remand order, seeking review of a different issue not addressed by the district court. This court held it had no jurisdiction to review because the district court or-

der was not "final." The court reasoned that if, after remand, Gilcrist was still not satisfied with the Secretary's decision, it would be up to the district court to determine whether the decision was in accordance with the law. Only then would the district court's order be final and subject to review. 645 F.2d at 818–19.

Furthermore, a review of the record indicates that the ALJ had other evidence to support his conclusion "that in regards to standing and walking, there is no legitimate impediments (sic) to the claimant's ability to perform substantial gainful activity." Dr. Hanley's written report contained an assessment of the claimant's spinal and lower extremity complaints. The ALJ referred to Dr. Hanley's report in the Judge's decision, noting:

> There is no significant evidence on clinical examination of a lumbosacral spine disorder.... A mild amount of edema was seen in the lower extremities, which the physician accorded to venous congestion. In regards to the claimant's knees, the claimant had extension from zero to 135°. Although scars on the right knee were noted, they were characterized as well-healed as was the scar on the left. There was no effusion noted in either knee and no significant ligamentous laxity. There was not crepitus on motion.

Reporter's Transcript 16. The ALJ did have a substantial basis, other than the interrogatories, on which he based his conclusions regarding Copeland's lower extremity limitations. His decision should be affirmed.

### C. The adequacy of the first ALJ's findings and conclusions regarding Copeland's lower extremity impairments.

Claimant Copeland asserts that the first ALJ erred by failing to explain his conclusion that the claimant's only limitation was in his upper right arm, and that he also failed to provide an adequate explanation for "rejecting the opinions of treating and consulting physicians."

This issue was not raised in the district court. Generally, the court of appeals will not consider arguments not raised in the district court. *Hormel v. Helvering*, 312 U.S. 552, 556–57, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). Such arguments may be considered if evidence of exceptional circumstances is presented. *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1483 (9th Cir.1986). No exceptional circumstances have been shown, and the issue will not be considered.

### D. The first ALJ's questioning of vocational expert Ronald W. Morrell.

■ Copeland contends that the questions posed by the first ALJ to the vocational expert should have considered his subjective complaints of pain and limited motion in his lower extremities and shoulders, and the residual functional incapacity noted by his physicians. Copeland cites *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984) as support for his contention that all questions presented by the ALJ to the vocational expert should have included consideration of Copeland's subjective complaints. In *Gallant*, the questions posed by the ALJ to the vocational expert were incomplete because they excluded pain as a limitation, and because the ALJ had no clear or convincing reasons for rejecting Gallant's claims of pain. *Id.* at 1456.

The ALJ posed various hypotheticals to the vocational expert, the first of which assumed that the claimant has "... impairments which restrict him in the shoulders bilaterally, hips, knees, ankles, and feet, as described, and that he has significant pain immobilizing or has 'disabling' pain on even the most minimal motions of the dominant extremities...." Other hypotheticals posed by the ALJ assumed that the claimant has the capacity to do "light" work. It is clear that not all of the questions assumed all of the impairments the claimant was asserting. However, exclusion of some of a claimant's subjective complaints in questions to a vocational expert is not improper if the Secretary makes specific findings justifying his decision not to believe the claimant's testimony about claimed impairments such as pain. *Martinez v. Heckler*, 807 F.2d 771, 773–74 (9th Cir.1986). The ALJ did make a specific finding that Copeland's claims that his pain precluded light work were not credible. The ALJ's decision states:

> Clarifying questions to the consultative examiner do expand the record to the point that the interrogatories establish some degree of function and handling in the upper extremity, and when the claim-

ant would, to a certain degree, have a certain amount of discomfort. Consequently, the degree of discomfort must be assessed to determine the credibility of this feature. The claimant could only, according to his presentation in the hearing room, raise his hand with the assistance of the left arm, which is disparate from that observed by the consultative examiner. He also indicated under oath that the claimant had a degree of neuropathy which even having him "pick up a dime" or the most minimal of activity. No authority in the administrative record has accorded the claimant any neuropathy stemming from a legitimate limiting of biceps impairment. These and other features do cloud credible acceptance of the claimant's complaints, particularly when he contends that even opposing a finger to the thumb produced complaints of pain and discomfort, which precludes function. Consequently, the undersigned concludes that the claimant has at least "light" capacities and could perform light work with a degree of pounds pressure as suggested in the testimony of the vocational expert summarized hereinbefore.

Reporter's Transcript 17. As to the ALJ's assessment of the claimant's subjective complaints regarding his lower extremities, the decision also contains this statement:

After having given consideration to the claimant's age, education, work experience and those assertions of limitations of function and pain that I deem credible and supportable, I find that the claimant's exertional impairments are not so severe as to preclude him from working at least at a light level of activity; and I, therefore, find that the claimant is "not disabled" and falls within the definition of Table 2 of Appendix 2 to Subpart P of Regulations 4, Rule 202.03.

Reporter's Transcript 18, para. 9.

Judge Turner's posing of various hypotheticals to the vocational expert was not improper given his specific findings that the claimant's assertions of severe pain in his arms and shoulders, and persistent disabling pain in his back, legs, and feet were not credible.

### E. The first ALJ's application of the medical vocational guidelines (GRIDS).

Copeland argues that the first ALJ improperly applied the medical/vocational guidelines (GRIDS). He further argues that, because his profile does not fall precisely within the actual circumstances of Rule 202.03 of the GRIDS, the GRIDS should not have been employed to determine whether he was capable of performing the exertional demands of "light work."

This issue was never raised in the district court, and no exceptional circumstances requiring consideration are presented. Therefore, it will not be considered in this appeal. *Hormel,* 312 U.S. at 556–57, 61 S.Ct. at 721; *Villar,* 782 F.2d at 1483.

### F. Legal standards used by the second ALJ in determining the appropriate onset date of disability.

■ The starting point in determining the date of onset of a disability is the individual's statement as to when the disability began. Here, Copeland maintains he has been unable to work since December 1981. Medical evidence serves as the primary element in the onset determination. When the medical or work evidence is not consistent with the claimant's statement, additional evidence may be needed to reconcile the discrepancy. The claimant argues that the second ALJ's finding of the onset of disability on September 9, 1985, was inconsistent with the 1984 and 1985 reports of Copeland's treating orthopedic surgeon, Swartz.

An examination of Swartz's statement in the 1984 report indicates that the doctor felt Copeland would "certainly not be able to work at all more than under light duty." This supports the second ALJ's conclusion that Dr. Swartz's 1984 report supported the first ALJ's finding that Copeland remained capable of performing a full range of light work. In finding the disability onset date of September 9, 1985, the second ALJ relied on Dr. Swartz's report dated

**542**

November 1, 1985, which followed Swartz's examination of Copeland on the September 9, 1985 date. Dr. Swartz stated that in his estimation Copeland "is totally unemployable," then detailed his reasons for believing Copeland would not be capable of doing light work: he could not sit for long periods of time, or do bending, stooping or reaching, he could not stand for prolonged periods of time, could not lift anything from below the belt or above eye level, could not lift repetitively, and could not lift over five pounds. Although Dr. Swartz also stated in that same report that Copeland's medical records were consistent with the onset of disability in May of 1982, the second ALJ clearly stated that that particular conclusion by Dr. Swartz was not supported by the reported findings.

The second ALJ's determination that the onset of disability was in September of 1985, and not before, is supported by substantial evidence. *Gallant*, 753 F.2d at 1453.

*G. The Administrative Law Judges' findings regarding the credibility of Copeland's complaints of pain.*

The Secretary cannot discredit pain testimony solely on the ground that it is not fully corroborated by objective medical findings. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986). If the claimant submits subjective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that he experiences pain at a higher level ("excess pain") the Secretary is free to disbelieve that testimony but must make specific findings justifying that decision. *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir.1985); *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir.1985).

Copeland maintains that since 1982 he has been unable to lift or carry due to pain in his right arm and shoulder; and that pain in his back also prevented him from performing light work. However, both ALJs rejected Copeland's complaints of disabling pain as not credible.

The first ALJ's specific reasons for finding the claimant not credible are set out in the foregoing discussion regarding the questioning of vocational expert Morrell. The second ALJ likewise

... did not find the claimant's testimony or allegations of disability to be fully credible in light of the fact that he left work because he was laid off (although allegedly because of medical reasons); received unemployment insurance benefits thereafter (apparently considering himself capable of work and holding himself out as available for work); his allegations of disability were not supported by the medical records for the period prior to September 1985; and his testimony at the hearing appeared to be somewhat exaggerated (he testified that the reason he had not brought his cane to the first administrative hearing was because he left it in the car) and appeared somewhat self-serving.

Reporter's Transcript 280.

Both judges' comments indicate they considered Copeland's credibility as well as medical evidence in making their decisions about Copeland's alleged disabling pain, in accordance with *Nyman*.

CONCLUSION

The district court's decision is AFFIRMED.