Lucy N. **TANNER**, Plaintiff–Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant–Appellee.

No. 90–4685
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 11, 1991.

James Spruel, Jr., Gray, Spruel & Burks, Lake Charles, La., for plaintiff-appellant.

Joseph B. Liken, Karen J. Sharp, Office of Reg. Counsel HHS, Rodney A. Johnson, Dallas, Tex., for defendant-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Lucy Tanner of Welsh, Louisiana, appeals from a district court judgment affirming the Secretary's decision refusing her Social Security disability insurance and supplemental income payments. As her first assignment of error, Tanner contends that the administrative law judge who decided her case denied her due process by relying on a written report submitted *after* the close of her administrative hearing. Finding this point well taken, we reverse and remand.

I

Tanner's quest for Social Security benefits began in July 1987 with the filing of Title II and Title XVI disability applications. In these applications, she complained of myriad maladies, among them severe leg pain and pronounced arthritis. Her paperwork led to initial, unfruitful encounters with the Louisiana Office of Family Security and the Social Security Administration, and later, to a hearing before an administrative law judge (hereinafter "ALJ"). The ALJ ruled against Tanner, concluding that she was not "disabled" for purposes of the Social Security Act; however, for reasons now unimportant, the Appeals Council vacated the ALJ's decision and remanded Tanner's case for a supplemental hearing, held May 4, 1989.

Following this supplemental hearing—and without notifying Tanner or Byrne Edwards, her attorney—the ALJ sought out the counsel of Jay Kallenbach, a vocational expert. The ALJ sent Kallenbach a copy of Tanner's file along with written interrogatories that inquired, in the main, whether someone with Tanner's skills and alleged infirmities could secure work. By way of response, Kallenbach submitted a written report indicating that a person of Tanner's background and condition was capable of filling a number of positions, all of which could be found in Louisiana. The ALJ then reviewed Kallenbach's report and forwarded a copy of it to Edwards, along with a short letter dated June 1, 1989:

Dear Mr. Edwards:

Enclosed is a copy of the vocational expert's report I received from Jay H. Kallenbach and a copy of our letter to him. I propose to include this report as an exhibit in Ms. Tanner's record.

Please review the enclosed report and submit any written comments or objections to this office within ten days from the date of this letter. If I have not received a response from you within this time frame, I will assume that you have no objections and will consider this report when rendering my decision in this case.

Sincerely,

/W. Thomas Bundy/

W. Thomas Bundy

Administrative Law Judge

Within eight days Edwards replied as follows:

Dear Judge Bundy:

Thank you for yours of June 1, 1989, wherein you enclosed for my review the interrogatories and responses put to Jay H. Kallenbach, a vocational expert.

I am familiar with Mr. Kallenbach and his work and his fine credentials. However, I must take issue with the interrogatories you put to him regarding the prior works of Lucy Tanner.

Ms. Tanner's prior work as an "academic instructor" and "community organization worker" would lead Mr. Kallenbach to believe that Lucy Tanner had in fact been a teacher, and that the work she did as a community organization worker was in fact skilled, when the testimony educed at the hearing indicated that this was in fact more of a driving and janitorial and food service occupation than it was an occupation which involved organizational skills, etc. I would ask that your interrogatories to Mr. Kallenbach either [sic] be redirected to reflect the actual duties performed by Ms. Tanner in her past occupations rather than listing her perhaps overly prestigious sounding job titles.

Otherwise, I have no objections to Mr. Kallenbach's qualifications or his opinions with regard to the interrogatories actually put to him. It is only the interrogatories themselves which would give rise to an objection on Ms. Tanner's part since they may indicate transferrable work skills that Ms. Tanner may not in fact possess.

With regards, I remain,

Yours very truly,

/E. Byrne Edwards/

E. Byrne Edwards

---

1. Indeed, the ALJ all but ignored the objection, only noting that "[t]he claimant's representative took issue with the interrogatories given to the vocational expert regarding the claimant's prior work in a letter dated June 8, 1989."

The ALJ never expressly ruled on or addressed Edwards's objections to the phrasing of the interrogatories.[1] Rather, on July 28, 1989, Judge Bundy incorporated Kallenbach's report into the record and issued a ruling rejecting Tanner's benefits claim—based largely if not entirely on Kallenbach's vocational conclusions. Tanner mounted unsuccessful administrative challenges to the ALJ's ruling before seeking relief in the district court, which relied on a magistrate's recommendation to uphold the Secretary's decision.

## II

The gist of Tanner's first argument[2] is easily stated: The ALJ committed reversible error by relying upon Kallenbach's post hearing report to turn down her request for benefits. Specifically, Tanner insists that she was denied the opportunity to cross-examine Kallenbach, so as to test his findings, and that she therefore was deprived of a property interest without a full and fair hearing. We have previously held that benefits claimants enjoy due process guarantees, not the least of which is the right to question report drafters such as Kallenbach. *Lidy v. Sullivan,* 911 F.2d 1075, 1077 (5th Cir.1990), *quoting Coffin v. Sullivan,* 895 F.2d 1206, 1212 (8th Cir. 1990) ("Due process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports"); *Wallace v. Bowen,* 869 F.2d 187, 192 (3d Cir.1989) ("... an opportunity for cross-examination is an element of fundamental fairness of the hearing to which a claimant is entitled ..."); *see generally Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971). Realizing this, the Secretary sets up as his sole line of defense the contention that Tanner waived her constitutional privilege by not expressly asking to cross-examine Kallenbach.[3]

---

2. Tanner makes two other attacks on the judgment below that we need not and do not address.

3. "The real issue in this case ... is not whether Plaintiff had the due process right to cross-examine Mr. Kallenbach but whether she waived

We find the Secretary's contention unconvincing. For starters, Tanner never expressed—clearly or otherwise—a desire to forego confronting Kallenbach. Far more importantly, Edwards explicitly objected to the premises upon which Kallenbach's report was based and asked that those premises be revised so that they might more accurately relate Tanner's true work experience. In so doing, Edwards laid the predicate to assert the right to cross-examine Kallenbach, failing a decision by the ALJ to recast the questions. When the ALJ denied Edwards's objection *sub silentio*, he deprived Edwards of the timely opportunity to assert, specifically, Tanner's right of cross-examination. Under such circumstances, we cannot infer a waiver from Edwards's failure to make an express demand for cross-examination. The fact that, in the case of reports received after the close of an administrative hearing, a waiver of the right to cross-examine "must be clearly expressed or strongly implied from the circumstances" only bolsters this holding. *Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir.1976); *Wallace*, 869 F.2d at 193.

Two cases cited by the Secretary, *Coffin, supra,* and *Hudson v. Heckler,* 755 F.2d 781, 784 (11th Cir.1985) are not supportive of a waiver of the right to cross-examine Kallenbach. Both are factually distinguishable: In *Coffin*, the claimant was twice apprised of the ALJ's decision to commission a vocational report but never replied to either of the ALJ's letters; similarly, the claimant in *Hudson* raised no complaints about the ALJ's decision to commission a post-hearing report.

### III

Although reluctant to mandate further administrative action, we reverse the judgment of the district court and remand this cause to the Secretary for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

this right by failing to raise this issue at the administrative level."  Secretary's brief, p. 11.