

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-14-2005

# Torres v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Torres v. Comm Social Security" (2005). *2005 Decisions.* Paper 845.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/845

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3542

———

ORLANDO TORRES,
Appellant

v.

JO ANNE B. BARNHART,
SOCIAL SECURITY ADMINISTRATION

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-05798)
District Judge: Hon. Lowell A. Reed, Jr.

———

Submitted Under Third Circuit LAR 34.1(a)
June 3, 2005

BEFORE: FUENTES, GREENBERG  and COWEN, Circuit Judges

(Filed: July 14, 2005)

———

OPINION

———

COWEN, Circuit Judge.

Orlando Torres ("Claimant") appeals from an order of the District Court affirming

a decision by the Commissioner of Social Security ("Commissioner") denying his

application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381-1383f. Claimant alleged that he had been disabled since January 8, 2002 because of arthritis, anxiety, depression, sleeping difficulties, hearing voices, and high blood pressure. We have jurisdiction under 28 U.S.C. § 1291, and for the following reasons, will affirm. Because we write solely for the parties, we only set forth the relevant facts in connection with our discussion.

I.

Claimant contends that the Administrative Law Judge ("ALJ") committed several errors in adjudicating his case, including: (1) denying his request to subpoena his treating psychiatrist, Dr. Roger Erro, to respond to interrogatories; (2) failing to enable the consultative mental examiner, Dr. Loren Laviolette, to review the entirety of the evidentiary file; (3) relying on a non-examining state agency check-list form as substantial evidence in evaluating the severity of his mental condition; and (4) relying on the reports of the consultative physical examiner, Dr. Horacio Buschiazzo, who was not furnished with available test results despite indicating that such results would have been helpful in his diagnosis. We address each of these contentions in turn.

II.

Our standard of review in this case is whether there is substantial evidence in the record to support the Commissioner's decision. *See Brown v. Bowen*, 845 F.2d 1211, 1212 (3d Cir. 1988).

III.

First, Claimant asserts that the ALJ flouted her duty to develop the record by refusing his request to subpoena Dr. Erro to clarify apparent inconsistencies that she purportedly acknowledged were contained within his psychotherapy treatment notes.[1] Claimant, however, misrepresents the ALJ's position. The ALJ did not express concern with ambiguities in the psychotherapy treatment notes or indicate a need or desire to further supplement the record. Rather, the ALJ perceived numerous inconsistencies between the documentary record and *Claimant's testimony* at the administrative hearing, and sought to address her credibility concerns through questioning Claimant. Contrary to Claimant's charge, the ALJ's remarks were not illustrative of confusion about the state and development of the record. Indeed, the ALJ expressed several times her confidence with the accuracy, clarity, and completeness of the record before her. Claimant cannot saddle the ALJ with his own perspective regarding the internal cohesiveness of the treatment notes and then accuse her of failing to develop the record by declining to issue a subpoena. *See* 20 C.F.R. § 416.1450(d) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may . . . issue subpoenas for the appearance and testimony of witnesses and for the production of . . . documents that are material to an issue at the hearing."). The ALJ correctly determined that a subpoena was

---

[1]Claimant requested that the ALJ subpoena Dr. Erro to have him complete an assessment form. According to Claimant, Dr. Erro had instituted a practice within the preceding year of no longer completing such forms for any of his patients.

not necessary for full presentation of Claimant's case, and accordingly did not abuse her discretion in not granting Claimant's request to subpoena Dr. Erro to complete an assessment form.

Related to this argument is Claimant's contention that the ALJ inappropriately evaluated the mental treating sources by employing her "lay" interpretation of the psychotherapy treatment notes. This assertion lacks merit. The ALJ reviewed and analyzed the treatment notes of Dr. Erro and therapist Rafael Sosa as a whole, and in combination with other evidence of record including Claimant's own testimony, determined that they showed remarkable improvement in Claimant's psychiatric condition and that his condition was not disabling. These conclusions are supported by substantial evidence. It cannot be disputed that Dr. Erro's and Mr. Sosa's respective examinations and treatment notes document a marked and dramatic improvement in Claimant's mental status. Claimant, however, accuses the ALJ of ignoring treatment notes which contradicted her observation of improvement. Although various treatment notes indicate that Claimant has not fully recovered, these relatively sporadic setbacks do not undercut the significance of Claimant's substantial improvement from psychotherapy treatment. Contrary to Claimant's characterization, the ALJ did not improperly ignore treatment notes which contradicted her opinion, but rather assessed those notes as a whole to reach her conclusion of substantial improvement. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are

4

conflicting, the ALJ is not only entitled but required to choose between them.").  Notably, the entries relied upon by Claimant to demonstrate the limit of his progress mostly detail Claimant's self-reported symptoms, as opposed to the doctor's and therapist's numerous assessments of continual improvement.

Likewise, Claimant challenges the ALJ's dismissal of the Global Assessment of Functioning Scale ("GAF")[2] estimates of the treating psychological sources, again accusing the ALJ of applying her own "lay" reinterpretation of the psychotherapy records. The ALJ discredited the GAF assessments, one aspect of Dr. Erro's opinion, as "not consistent with or supported by the symptoms reported in the session notes."  (App. at 31.)  The ALJ pointed out that the initial GAF of 49 was assessed at the time of Claimant's first evaluation in November 2001, before any treatment was administered.[3] One month later, Claimant was assessed a GAF of 40, and finally, in February 2002, was again assessed with a GAF of 49.[4]  Since that time, however, the ALJ observed:

The notes show a dramatic and positive response to treatment.  Although

_____

[2]GAF measures the psychological, social, and occupational functioning levels of an individual.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

[3]In detailing his rationale for according less weight to the GAF estimates, the ALJ misstated the initial GAF assessment as "40," rather than 49.

[4]A GAF score falling between 41 and 50 indicates "'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Boyd v. Apfel*, 239 F.3d 698, 702 (5th Cir. 2001) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)).

the claimant had more symptomatology at the initial psychological evaluation on December 21, 2001, he then was taking psychotropic medication and getting counseling that showed increased levels of social functioning and a decrease in psychotic symptoms within a year of his alleged onset date. For example, [listing numerous examples] . . . . In less than one year of mental health treatment, the only remaining significant mental limitation appears to be in the area of concentration and attention.

(*Id*. at 34.) In light of the latter treatment notes, which undeniably set forth a consistent pattern of substantial improvement, including in the area of social functioning, the ALJ justifiably accorded less weight to Dr. Erro's and Mr. Sosa's GAF assessments as an inaccurate indicator of the *present* severity of Claimant's mental impairments. In light of the objective documentary evidence, this was proper. *See Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (noting Commissioner's obligation to weigh medical evidence and choose between conflicting accounts). Unlike in *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), upon which Claimant relies, the ALJ here did not inappropriately reject the treating physician's opinion on the basis of credibility judgments, speculation, or lay opinion. Instead, the ALJ's finding was based on the objective medical evidence contained in the psychotherapy treatment notes, and is not "overwhelmed" by contrary evidence in the record. *See id.* at 320.

Turning to Claimant's second alleged point of error, although the ALJ did not grant Claimant's request to subpoena Dr. Erro, she did grant the alternative request of sending Claimant for a post-hearing psychological consultative examination. Claimant asserts that Dr. Laviolette had not been furnished with the entirety of his mental treatment

records to review in connection with the examination, as he had requested at the administrative hearing. In addition, the ALJ did not respond to Claimant's objection, made after the consultative examination, that Dr. Laviolette had not been provided with the treatment records. Claimant, however, cites no authority in support of his contention that the ALJ was obligated to send those treatment records. Importantly, considering issues of fundamental fairness, there is no evidence that Dr. Laviolette could not render an accurate assessment without the additional materials, and it is not even clear from the record that Claimant's documentary file was not supplied to Dr. Laviolette, although the doctor did not reference it in his report. Finally, it is noted that the ALJ ordered the post-hearing consultative psychiatric examination to satisfy Claimant's - not the ALJ's - desire for further evidence and clarification of the record. As discussed above, the ALJ did not believe that the record required further supplementation. Nor did she indicate that a consultative examination was necessary to resolve conflicts in the record evidence. In short, any failure of the ALJ to supply Dr. Laviolette with Claimant's documentary file does not constitute reversible legal error.

Third, Claimant challenges the ALJ's reliance upon the non-examining state agency psychologist's May 17, 2002 assessment to support her conclusions regarding Claimant's mental impairments and mental Residual Functioning Capacity ("RFC"), contending that the assessment does not constitute substantial evidence. The state agency consultant found that Claimant's schizoaffective disorder caused "mild limitations in . . .

daily living; mild limitations in his social functioning; moderate limitations in his concentration, persistence, or pace; and no episodes of decompensation." (App. at 31, 248.) These limitations were ultimately adopted by the ALJ in fashioning Claimant's RFC. Initially, Claimant argues that the consultant's assessment should not be accorded substantial weight because Claimant submitted additional treatment records following that assessment. The subsequent records, however, were taken into account by the ALJ in conjunction with the consultant's assessment, and significantly, they bolster the ALJ's findings regarding the extent and ramifications of Claimant's mental impairments. In contrast, the state agency reports erroneously relied upon by the ALJ in *Morales v. Apfel* were prepared without the benefit of subsequent examinations and a treating physician assessment which all directly undermined the conclusions drawn by the state agency doctors. *See* 225 F.3d at 320. Claimant additionally argues that the ALJ ignored the consultant's second check-list evaluation, also prepared on May 17, 2002. This second assessment found Claimant moderately limited in several areas falling under the rubric of "sustained concentration and persistence," including the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (*See* App. at 252.) The consultant opined that Claimant "is capable of performing adequate . . . self care with physical problems being the primary limiting factor. He can get along with people and communicate clearly. Self

8

preoccupation can affect concentration. He can follow instructions and is capable of performing simple, routine tasks." (*Id*. at 254.) Although the ALJ did not reference this second report in her decision, it clearly reinforces the conclusions reached in the consultant's first report. Despite his findings regarding Claimant's limited abilities in maintaining concentration and persistence, the consultant nonetheless determined Claimant capable of following simple instructions and performing routine tasks. This is entirely consistent with the ALJ's observation, based on her review of the treatment notes, that "the only remaining significant mental limitation appears to be in the area of concentration and attention." (*Id*. at 34.) Furthermore, as noted by the ALJ, this determination comports with Dr. Laviolette's finding that Claimant's ability to follow simple instructions was limited, but not precluded. The ALJ accordingly restricted Claimant to work involving no more than simple instructions. In reaching her finding that Claimant's mental impairments were not disabling, the ALJ considered the record as a whole. The mental impairment and mental RFC analyses are free of reversible legal error and are supported by substantial evidence.

Last, Claimant contends that the ALJ's physical RFC findings are not supported by substantial evidence. The ALJ calculated that Claimant retains the following physical RFC:

> [L]ight exertion, not requiring lifting with his right upper extremity above his shoulder; that would allow him to use a cane for standing and walking; not requiring use of his right foot for repetitive actions such as operating foot controls; requiring no more than occasional postural activities; with no

concentrated or excessive exposure to extreme cold, dampness, or vibrations . . . .

(*Id*. at 34.)  The ALJ based her physical RFC analysis on the evaluations of Dr. Buschiazzo.  She rejected, however, his conclusion that "claimant is limited to standing and walking only one hour," (*id.*), as being unsupported by the objective medical evidence and because Claimant's testimony on that matter was embellished and unconvincing.

Claimant initially points out that Dr. Buschiazzo was not supplied with pertinent medical records.  In his initial examination, Dr. Buschiazzo diagnosed "[c]hronic lumbalgia with possible right lower extremity radiculopathy, possibly secondary to degenerative joint disease.  Correlation with x-rays taken at Temple University Hospital during the current year would be helpful."  (*Id*. at 215.)  He noted in his follow-up examination that Claimant had undergone "x-rays at Temple University of his head, but does not know the results.  Examination of the head is otherwise normal."  (*Id*. at 226.)  Significantly, however, Dr. Buschiazzo never specifically requested such records, never ordered additional testing despite ordering additional pulmonary testing, and did not otherwise state or imply that the absence of such records undermined the accuracy of his diagnoses.  Claimant's assertion that the failure to ensure Dr. Buschiazzo access to the necessary treatment documents necessarily resulted in a compromised diagnosis is simply not supported by the record.  Claimant's reliance on 20 C.F.R. § 416.912(f), which states that "[g]enerally, we will not request a consultative examination until we have made

every reasonable effort to obtain evidence from your own medical sources," to support his argument is misplaced. The various testing and documents that Claimant highlights were not provided to Dr. Buschiazzo were available to and were expressly considered by the ALJ, who in fact found that Claimant suffered from degenerative disc disease of the lumbar spine.

The ALJ's rejection of Dr. Buschiazzo's standing and walking limitations is soundly based on substantial evidence. Claimant's back pain, which he represented to Dr. Buschiazzo as intermittent and which radiated to his right lower extremity, was conservatively treated with Anaprox. Claimant explicitly stated in his SSI application that the medication provided some pain relief. Furthermore, Dr. Buschiazzo found that all ranges of motion were within normal limits, except for only mild limitations in the hip and shoulder. The ALJ additionally noted her concern that Claimant did not put forth full effort during his various examinations, as confirmed by Dr. Buschiazzo and Dr. Laviolette, and that he exaggerated his symptomatology at the administrative hearing, as confirmed by impeachment with the psychotherapy notes. *See Sullivan*, 970 F.2d at 1187 (noting Commissioner's obligation to weigh medical evidence and choose between conflicting accounts). In any event, the ALJ's dismissal of Dr. Buschiazzo's standing and walking limitations did not prejudice Claimant because she determined that Claimant could perform his past relevant work as a stone setter, which is classified as unskilled, sedentary work. The Vocational Expert confirmed that even if Claimant was limited to

11

standing and walking no more than one to two hours in an eight-hour day, he could still perform his past relevant work as a stone setter.

The ALJ's assessment of Claimant's physical RFC is supported by substantial evidence.

IV.

For the foregoing reasons, the judgment of the District Court entered on July 8, 2004, will be affirmed.