# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41177

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2018

Lyle W. Cayce
Clerk

JAMES BARRETT,

> Plaintiff - Appellant

v.

NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,

> Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, CLEMENT, and COSTA Circuit Judges.

GREGG COSTA, Circuit Judge:

In deciding whether a claimant is eligible for Social Security disability benefits, administrative law judges often consider the reports of medical consultants. These doctors, who work for either Social Security or a state agency, do not examine the claimant but review the medical files of those who have and assess the claimant's physical limitations. We decide whether a claimant has an absolute right to question these consultants—a right we have previously recognized when applied to examining physicians—or whether that right should depend on a case-by-case assessment of the need for cross-examination.

No. 17-41177

I.

Over a decade ago, James Barrett filed the claim for disability benefits that has now reached this court. Two examiners, an ALJ, and the Social Security Administration's Appeals Council initially denied his 2008 application. In a stroke of good fortune for Barrett, however, the Appeals Council later remanded his claim to the ALJ because it could not locate the record of his hearing.

Back before the ALJ, Barrett for the first time took issue with a Residual Functional Capacity (RFC) form signed in 2008 by Dr. Robin Rosenstock, a state agency medical consultant who did not examine Barrett. The form says Rosenstock reviewed Barrett's medical records and determined that Barrett could stand for six hours in an eight-hour workday, sit for the same, occasionally lift 20 pounds but frequently lift 10, and frequently stoop, kneel, crouch, and crawl. Another state medical consultant reviewed the form and agreed with its conclusions.

Before the hearing on remand, Barrett asked the ALJ to subpoena Rosenstock so he could question her about the RFC form. As an alternative, Barrett asked to submit written questions. The ALJ neither issued the subpoena nor sent the interrogatories. Noting Barrett's objection, he admitted the RFC form into evidence.

The form affected the outcome. When questioning the vocational expert, the ALJ asked about a hypothetical claimant who had limitations very similar to those detailed in the RFC form except for being slightly more restricted in his movement. The vocational expert replied that several jobs would be available to a person so limited—jobs like cleaner, assembler, and laundry

2

No. 17-41177

folder.  In denying benefits for the period in question,[1] the ALJ determined that Barrett's physical capabilities were those of the hypothetical person he had posed to the vocational expert.  He gave the form "considerable weight" because, although he slightly adjusted Rosenstock's findings,[2] nothing in the record refuted her opinion.  Because the vocational expert had testified that a person with the limitations the ALJ had described would be able to find work, Barrett was not eligible for benefits.  Barrett once again appealed to the Appeals Council, but it refused review.

Barrett filed suit in the district court, arguing that the ALJ's failure to subpoena Rosenstock was reversible error.  The district court disagreed.

## II.

## A.

Barrett argues that because we have recognized an absolute right to question examining physicians, *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990), he has a similar right to question medical consultants.  We concluded that the right to question examining physicians flowed from *Richardson v. Perales*, 402 U.S. 389, 402 (1971).  *Perales* addressed not a procedural question of Social Security law but a substantive one: whether reports of examining physicians, despite being hearsay, could constitute substantial evidence supporting an ALJ's disability determination.  *Id.*  In answering "yes," the Court included a caveat: a medical report could count as substantial evidence

---

[1] Because of a second application filed by Barrett and some other procedural quirks that are irrelevant to our holding, the ALJ was asked to determine only whether Barrett was disabled between June of 2008 and April of 2010.  The second application was partially granted, and Barrett was deemed disabled and eligible for benefits beginning in 2011.

[2] The ALJ rejected Rosenstock's conclusions that Barrett did not have any environmental limitations and that he was able to perform several postural functions frequently.  He found that Barrett should avoid extreme temperatures and could perform postural functions no more than occasionally.

"when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician." *Id.* *Lidy* understandably took this to mean that an applicant must be provided an opportunity to subpoena and question an examining physician who files a report.[3] *Lidy*, 911 F.2d at 1077.

The Commissioner has never agreed with our reading of *Perales*, though it has followed it in this circuit. *See* Acquiescence Ruling, SSR 91-1(5), 1991 WL 333940. Under Social Security regulations, an ALJ is required to summon a physician to a hearing only when she determines it is "reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1).[4] All other circuits follow the regulation's case-by-case approach rather than giving claimants an automatic right to question examining physicians or others who submit reports. *See Passmore v. Astrue*, 533 F.3d 658, 664–65 (8th Cir. 2008); *Yancey v. Apfel*, 145 F.3d 106, 113 (2d Cir. 1998); *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996); *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994); *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988); *see also Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005).[5]

So the question is whether we extend *Lidy*—an outlier even as to examining physicians—to medical consultants. *Lidy* did not address such sources, though we later suggested that its reach applied beyond examining physicians. *See Tanner v. Sec'y of Health & Human Servs.*, 932 F.2d 1110,

---

[3] That interpretation is not without its detractors. Some courts have noted that, while the *Perales* Court used the term "right," it did not clarify the nature of that right—qualified or unqualified, constitutional or regulatory. *See, e.g.*, *Passmore v. Astrue*, 533 F.3d 658, 661–62 (8th Cir. 2008); *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996).

[4] The two regulations govern hearings for disability benefits and supplemental security income respectively, but are otherwise identical.

[5] The Eleventh Circuit "assume[d] without deciding, that [an] ALJ has the discretion to decide when cross-examination is warranted." *Demenech v. Sec'y of the Dep't of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990).

1112 (5th Cir. 1991). In *Tanner*, an ALJ submitted posthearing inquiries to a vocational expert without giving the claimant an opportunity to question the expert. *Id.* at 1111. We cited *Lidy* for the proposition that "claimants enjoy due process guarantees, not the least of which is the right to question report drafters such as" the vocational expert. *Id.* at 1112. But this remark was not essential to our holding; the government did not contest whether the claimant had an absolute right to subpoena the vocational expert, instead arguing waiver of that right. *Id.*; *see also United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (explaining that we are not bound by dicta). What is more, there is a stronger interest in questioning the author of a posthearing submission because there is otherwise no opportunity to rebut it in front of the judge. *See, e.g., Wallace v. Bowen*, 869 F.2d 187, 194 (3d Cir. 1989).

Because our caselaw has not answered the question, we consider the usual due process factors in deciding whether there is an absolute right to question medical consultants. Those factors are the importance of the private interest at stake; the risk of erroneous deprivation of that interest and the value of the requested additional procedure; and the government's interest, including the financial and administrative burdens the additional procedure would create. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

A desire to subpoena examining and nonexamining physicians implicates the same private interest: a meaningful opportunity for the claimant to present his best case and a fair determination of his eligibility. *Flatford*, 93 F.3d at 1306.

But the risk that mistakes in a medical consultant's RFC form will wrongly deprive the claimant of benefits is not as great as the risk posed by inaccuracies in an applicant's underlying medical records. The role of an examining physician is twofold—their reports may contain ultimate opinions, but they also contain important factual observations. Those observations

about an applicant's mental and physical condition are the first building block in the disability determination. They are the primary source that medical consultants and vocational experts use to form their opinions. Those opinions, akin to secondary sources, are less critical than the underlying observations because experienced ALJs can draw their own conclusions based on accurate medical information. The ALJ in this case did just that, concluding Barrett likely had greater limitations than the medical consultant suggested. Social Security regulations recognize the foundational nature of the examining physician's observations: consistency with those observations is a factor in determining the value of any doctor's opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And when examining physicians do provide opinions, regulations suggest that they will often be given greater weight because the examining relationship provides them with a better understanding of an applicant's condition.[6] 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

Nor will cross-examination always be necessary to expose errors in the opinions of medical consultants. The nonadversarial nature of Social Security hearings—the agency does not have a lawyer present—lessens the value of cross-examination. *Flatford*, 93 F.3d at 1306. Unlike in a traditional courtroom setting, Social Security ALJs play an active role in the full development of the record. 20 C.F.R. §§ 404.944, 416.1444. They operate under a "duty of inquiry"—they cannot leave it to the claimant and his representative to thoroughly probe witness testimony, but must do so independently. *Campbell v. Heckler*, 461 U.S. 458, 471 (1983) (Brennan, J.,

---

[6] Until recently, the Social Security Administration directed ALJs to discount RFC forms that were inconsistent with the underlying factual record. SSR 96-6p, 1996 WL 374180. This ruling has since been rescinded and replaced, but was in effect at the time of the ALJ's decision in this case. *See* SSR 17-2p, 2017 WL 3928306.

No. 17-41177

concurring).  That independent review may hurt the claimant's case, or, as in this case, may lead an ALJ to discredit, at least partially, adverse evidence.

We do not mean to say that the opinions of medical consultants are unimportant or error free.  But granting an *automatic* right to subpoena them is too strong a medicine.  We do not see why examination of a medical consultant will always, or even usually, lead to meaningful impeachment.  That is especially true when, as in this case, the RFC form is reviewed by a second medical consultant, lessening the risk of error.  When a claimant has legitimate concerns that an RFC form is inaccurate or misleading, existing regulations provide the opportunity to question the drafter.  Absent such cause, allowing questioning may more often result in delay than the discovery of useful evidence.

That delay, along with the other costs of an absolute right to question medical consultants, is the final due process consideration.  The number of Social Security disability claims is massive; in one recent year, they numbered over 2 million.  SOC. SEC. ADMIN., SSA PUB. NO. 13-11826, ANNUAL STATISTICAL REPORT ON THE SOCIAL SECURITY DISABILITY INSURANCE PROGRAM, 2016 150 (2017), available at https://www.ssa.gov/policy/docs/statcomps/di_asr/2016/di_asr16.pdf.  Slowing the processing of that enormous caseload is not just a problem for the agency; it delays assistance to eligible claimants as Barrett's case illustrates.  To be sure, modern technology such as videoconferencing eases the burdens of allowing cross-examination, but it does not eliminate it.  *See* Social Security Program Operations Manual Sys. (POMS), DI 33025.080, available at https://secure.ssa.gov/poms.nsf/lnx/0433025080.  The burdens of testifying are significant enough that recipients of subpoenas from Social Security ALJs often do not comply.  That may result in exclusion of the report.  *See* Victor G. Rosenblum, *The Right to Cross-Examine Physicians in Social Security*

7

*Disability Cases*, 26 FLA. ST. U. L. REV. 1049, 1061 (1999) (recounting one practitioner's opinion that "the only effect of the subpoena, as a practical matter, is to furnish the grounds for a motion to exclude the doctor's report or records"). That is another downside of granting an absolute right to question medical consultants. It allows for abuse by claimants who have no legitimate need to question the consultant, but instead merely want to swat away inconvenient evidence.

Balancing these factors leads us to conclude that disability claimants' interest in accurate disability decisions is adequately protected by the qualified right to question medical consultants they already enjoy. That type of case-by-case assessment of need is common for procedural issues in disability cases. *See, e.g., Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (giving ALJs flexibility to order a consultative examination only when it would be necessary to make a disability determination).

Even if it were a close question whether due process requires extension of the *Lidy* right to nonexamining physicians, not wanting to enlarge our outlier status in this area would be the tiebreaker. "The interest in uniform national application of the law is particularly strong in an area like Social Security, where the number of cases is so high." *Copeland v. Colvin*, 771 F.3d 920, 925 n.3 (5th Cir. 2014). Indeed, part of what *Lidy* relied on was a sense that four circuits (the First, Second, Third, and Eighth) favored an absolute right. *Lidy*, 911 F.2d at 1077. But three of those circuits have since rejected *Lidy*'s conclusion and in the remaining one a district court doubted that the circuit would recognize the unqualified right. *See Passmore*, 533 F.3d at 664; *Yancey*, 145 F.3d at 113; *Torres*, 139 F. App'x. at 414; *see also Morin v. Apfel*, 1999 WL 33117165, at *5 n.6 (D. Maine). Nor have other circuits recognized such a right. *Flatford*, 93 F.3d at 1305; *Glenn*, 21 F.3d at 988; *Copeland*, 861 F.2d at 539. The Seventh Circuit, the only one to consider the question in the

context of medical consultants, rejected an absolute right. *Butera v. Apfel*, 173 F.3d 1049, 1058 (7th Cir. 1999).

We thus decline to extend a unique and inflexible rule to a different context. This moves our law not just closer to that of other circuits, but closer to the general principle that "[c]ross-examination is . . . not an absolute right in administrative cases." *Cent. Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1068 (5th Cir. 1982); *see also* 5 U.S.C. § 556(d) (requiring under the Administrative Procedure Act only "such cross-examination as may be required for a full and true disclosure of the facts"). If anything, the need for case-by-case flexibility is even greater for the Social Security Administration— "the Mount Everest of bureaucratic structures," *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (quoting Paul R. Verkuil, *The Self-Legitimating Bureaucracy*, 93 YALE L.J. 780, 781 (1984))—than it is for most agencies.

## B.

We now address whether Barrett showed that case-specific need to question the medical consultant. We review for abuse of discretion an ALJ's determination whether the requested questioning was "reasonably necessary for the full presentation of [the] case." 20 C.F.R. §§ 404.950(d)(1),ied te 416.1450(d)(1); *see Flatford*, 93 F.3d at 1307.

Barrett hoped to find out whether Rosenstock adequately reviewed his medical records and whether she actually completed the form or simply signed the work of another. The ALJ determined that Barrett's concerns were merely speculative. He also explained that he was familiar with the general procedures used in completing these forms. Without some evidence that this particular RFC form was defective, the ALJ concluded that additional information about Rosenstock's process was unwarranted.

The ALJ did not abuse his discretion by refusing to issue the subpoena or interrogatories. The request was made six years after Rosenstock filled out

the form.   The likelihood that she would remember anything about the circumstances surrounding this form was, by then, exceedingly low.   Her opinion had been reviewed and affirmed by a second medical consultant.   And the ALJ did not fully accept her opinion.   He engaged in an exhaustive review of Barrett's medical records and determined that Barrett was slightly more restricted in his movements and should avoid extreme temperatures.   Even if an ALJ could have concluded otherwise, it was not an abuse of discretion to deem the proposed questions unnecessary.

***

The judgment is AFFIRMED.